IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RAY A. FOX, by and through his guardian, ROSE FOX, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 C |
| v. | ) ) ) | |
| ADMIRAL INSURANCE COMPANY, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## COMPLAINT

NOW COMES Plaintiff RAY A. FOX, by and through his guardian ROSE
FOX, and his attorneys, LOEVY & LOEVY, and complaining of Defendant
ADMIRAL INSURANCE COMPANY, states as follows:

## INTRODUCTION

1. In September 2009, Plaintiff Ray A. Fox ("Fox"), through his guardian
Rose Fox, brought a lawsuit for damages against Wexford Health Sources, Inc.
("Wexford") and other parties in the United States District Court for the Northern
District of Illinois, captioned as *Ray A. Fox v. Dr. P. Ghosh, et al.*, No. 09-C-5453.
The case sought damages caused by the denial of appropriate medical care while
Fox was incarcerated at the Illinois Department of Corrections ("IDOC"), Northern
Reception and Classification Center.

2. Specifically, Fox suffers from epilepsy or a similar seizure disorder,
and Wexford employees and others caused him to be denied necessary seizure
medication. The denial of his seizure medication caused Fox to suffer seizures that

led to severe, permanent brain damage, requiring around the clock care for the rest of his life.

3.    After years of intensive litigation in Fox's case, the Court denied Wexford's motion for summary judgment in December 2011.

4.    Given the seriousness of Fox's injuries and the egregiousness of Wexford's and its employees' actions, Wexford was exposed to a substantial likelihood of a jury verdict for many millions of dollars.  The costs of Plaintiff's future care alone came to almost $12 million.

5.    Defendant Admiral Insurance Company ("Admiral") provided Liability Insurance Policies (the "Admiral Policies") to Wexford that covered the claims alleged in Fox's lawsuit against Wexford.  The 2006-2007 Admiral policy is numbered E0000000615-10, with effective dates of October 1, 2006 to October 1, 2007.  The 2007-2008 Admiral policy is numbered E0000000615-11, with effective dates of October 1, 2007 to October 1, 2008.

6.    Despite Plaintiff's and Wexford's best efforts to reach a reasonable settlement, the real possibility that Wexford faced a jury award substantially in excess of policy limits, and the fact that Admiral's insurance policies unquestionably covered the conducted alleged in Fox's lawsuit, Admiral refused to settle within the policy limits, in bad faith.

## JURISDICTION AND VENUE

7.    This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of the State of Illinois and Defendant is a citizen of Delaware

and New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES AND RELATED ENTITIES

9. Plaintiff Ray A. Fox and his guardian Rose Fox are citizens of Illinois, residing in Cook County.

10. Defendant Admiral Insurance Company is a Delaware corporation, with its principal place of business in New Jersey.

11. Non-party Wexford is a contractor to the State of Illinois, retained to provide medical care to inmates incarcerated in the IDOC.

## FACTS

12. In September of 2007, a Wexford employee prescribed Fox insufficient anti-seizure medication while he was incarcerated in IDOC.

13. When Fox ran out of the prescription, Wexford employees and others for whom Wexford was responsible failed to give him additional medication despite his pleas to them for more medication. Pleading in the alternative, Wexford employees and others for whom Wexford was responsible failed to provide Plaintiff with his medication in September of 2007 and ignored his pleas for that medication in October 2007.

14.     Wexford's inaction, *inter alia*, led to Fox suffering severe seizures, which caused permanent, serious injuries.

15.     Fox's legal guardian subsequently filed suit on his behalf, against Wexford, certain Wexford employees, and others.

16.     At all relevant times, the Admiral Policies provided Wexford with at least nine million dollars of insurance coverage for the claims alleged in Fox's case.

17.     Specifically, the Admiral Policies in the 2006-2007 and 2007-2008 policy periods each provide $3 million in "Long-Term Healthcare Facilities Professional Liability" coverage (coverage D) for each "medical incident," and an additional $3 million in coverage for each "occurrence" in "Personal and Advertising Injury Liability" coverage (coverage B), and both of those coverage provisions applied to Fox's injuries.

18.     The "Long-Term Healthcare Facilities Professional Liability" coverage applies to amounts that Wexford (or any additional insureds) "becomes legally obligated to pay as damages because of 'bodily injury' to which this insurance applies, caused by a 'medical incident' occurring in the course of performing professional services for your long-term healthcare facility."

19.     The "Personal and Advertising Injury Liability" applies to amounts that Wexford (or any additional insureds) "becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

20.     Where an injury satisfies the definitions of both "Long-Term Healthcare Facilities Professional Liability" and "Personal and Advertising Injury Liability," the Admiral Policies provide for coverage under each.  Put differently, there is $6 million in coverage available under each policy for an injury that satisfies the definitions of both "Long-Term Healthcare Facilities Professional Liability" and "Personal and Advertising Injury Liability."

21.     Additionally, Fox suffered injury in both September 2007 and October 2007.  Accordingly, he was entitled to coverage in both policy years, with the 06-07 policy applying to the conduct in September and the 07-08 policy applying in October.

22.     In November 2009, Admiral sent a letter to Wexford agreeing to defend Wexford in Fox's case under the "Long-Term Healthcare Facilities Professional Liability" portion of the 2007-2008 policy, but reserving its right to seek a declaratory judgment regarding whether the Admiral Policies covered punitive damages that Fox sought against Wexford.

23.     In that letter to Wexford, Admiral also explained that it would not be liable for any amount in excess of the Admiral Policy limits, so that "should you choose, it is your right to engage your own attorney, at your own expense, to protect you against any uninsured interest.  The attorney we have retained to defend you will coordinate the defense with your personal attorney."

24.     Admiral did not offer to reimburse Wexford for expenses it might incur by hiring its own counsel.

25.    Admiral retained Michael Charysh, of Charysh & Schroeder Ltd., to defend Wexford and two individual defendants (Dr. Constantine Peters and Nurse James F. Becker) who were Wexford employees and additional insureds on the Admiral Policies.

26.    Through Charysh, Admiral controlled Wexford's, Becker's, and Peters's defense and all settlement negotiations.

27.    At no point did Admiral explain that its chosen counsel had a conflict of interest in representing Wexford, the additional insureds, and Admiral.

28.    On January 11, 2012, Fox's counsel sent a letter to Charysh stating that the Admiral Policies were applicable to Fox's claims against Wexford, Becker, and Peters, and making the following alternative settlement offers:  (a) Fox would settle with all three defendants for a total of $5.99 million; (b) Fox would settle with either Becker or Peters, in their individual capacities only, for $2.99 million; or (c) Fox would waive his claim for punitive damages against Becker and/or Peters if they would agree to have a negligence instruction submitted to the jury despite the fact that Fox may not have pleaded such a claim.

29.    The first of the alternative settlement offers set forth in the January 11, 2012 letter, to settle with all three defendants for $5.99 million, would have settled all claims against Wexford, Becker, and Peters for less than the limits of the Admiral Policies.  Nonetheless, Admiral rejected the offer.

30.    When Admiral rejected Plaintiff's January 11, 2012 settlement offer, the case was set for trial on January 23, 2012.  On January 20, 2012, Charysh &

6

Schroeder brought an emergency motion to move the trial date based on Becker's supposed inability for health reasons to travel from Iowa to Illinois. In order to keep the trial date, Plaintiff offered to dismiss Becker with prejudice for no money so that the case could go forward as schedule, and further offered to travel to Iowa to take video-testimony immediately or to let Becker testify by video-conference. Further, the court located a video-conference location near Becker's home that was available for trial at minimal cost. Charysh & Schroeder nevertheless turned down the offer to dismiss Becker for free in order to have the trial date moved.

31. Settlement negotiations resumed when Fox's counsel emailed Charysh another settlement letter on July 10, 2012, explaining that Admiral had stood in the way of all previous settlement negotiations, including by misstating the applicable policy limits and by refusing a previous offer by Fox to dismiss all claims against Becker for free, simply to keep the previously set January 2012 trial date. Fox's counsel also stated that actual damages in the case could exceed $20 million, so that Admiral's bad faith refusal to settle was placing Charysh's clients in serious jeopardy.

32. In the July 10, 2012 letter, Fox's counsel made the following settlement demand, offering to release all claims against Wexford, Becker, and Peters, pursuant to the following terms: (a) Admiral would pay $3 million to Fox; (b) Wexford, Becker, and Peters would remain parties at trial; (c) Fox would enforce any judgment he obtained against Wexford, Becker, or Peters only up to the amount of any additional insurance or indemnity available to them, plus any amounts

7

recovered from the broker who placed Wexford's 2006 and 2007 insurance policies, plus $100,000 for each million dollars of the amount of the judgment that exceeds the amounts paid by Admiral and the other sources of potential recovery set forth in the July 10 letter; and (d) Fox would not seek punitive damages from Wexford, Becker, or Peters.

33.     The July 10 letter explained that the settlement offer was open until July 17, 2012.

34.     On July 12, 2012, Admiral, acting through David Carlson, an attorney that Admiral had retained to negotiate the Fox case, rejected the July 10 offer without Wexford's input, and without even informing Wexford that it planned to reject the settlement.  Had Wexford been properly advised, it would have made a reasonable business decision about contributing money to the settlement at that time.

35.     After further negotiations, Admiral offered to settle all claims against Becker and Peters (but not Wexford) for $3 million, and Fox accepted the offer on August 17, 2012.

36.     In making the $3 million offer to settle the claims against Becker and Peters, Admiral explained to Wexford that Admiral's counsel estimated that Wexford had "less than a 35%" chance of prevailing on liability, and that "it is anticipated that an adverse verdict would likely include compensatory damages substantially in excess of the $3 million limits of our policy.  Further a verdict may well include substantial punitive damages."

8

37.     Admiral also asked whether Wexford would "contribute to the settlement offer so that Admiral could present the offer as a 'global settlement offer.'" Admiral and Wexford then discussed what amount of contribution from Wexford might result in a global settlement, with Admiral stating its belief that Wexford would be required to contribute an amount in the seven figures. During that discussion, Admiral did not mention the terms of the July 10, 2012 settlement offer from Fox, which could have resulted in a contribution from Wexford well under seven figures had Admiral contributed the $3 million that it paid for Becker and Peters shortly after rejecting the July 10, 2012 offer.

38.     After Fox accepted Admiral's offer to settle all claims against Becker and Peters for $3 million on August 17, 2012, Admiral wrote Wexford to explain its position that the $3 million payment exhausted all available insurance, but that it would continue to pay for Wexford's defense, but only through trial, "as a courtesy."

39.     Wexford responded by stating that it disagreed with Admiral's position that only $3 million in insurance was available, and stating that "Admiral has a continuing duty to properly defend Wexford Health through the entirety of this judicial course."

40.     On October 8, 2012, Fox offered to settle all claims against Wexford for $3 million to be paid on November 30, 2012, and an additional payment of $300,000 due in 2013 or later. Wexford forwarded that offer to Admiral, stated that Wexford agreed with all terms of the settlement demand, and explained that $3 million was still available under the Admiral Policies.

41.     Admiral rejected the October 8, 2012 settlement demand, explaining to Wexford its belief that its previous $3 million payment to settle the claims against Becker and Peters had exhausted the coverage available for Fox's claims.  And contrary to its November 2009 reservation of rights and the position it had consistently taken since then, Admiral also informed Wexford that its previous $3 million payment was made under the Personal and Advertising Coverage provision of the 2007-2008 Admiral Policy, and not the Long-Term Healthcare Facilities provision.

42.     Admiral is estopped from claiming that the $3 million paid in settlement was/is being made under the Personal and Advertising coverage of the 2007-2008 Policy.  Admiral is also estopped from claiming that policy limits under the Personal and Advertising coverage of the 2007-2008 Policy are not due and payable for the allegations in the Fox lawsuit.

43.     The Personal and Advertising injury coverage of the 2007-2008 Admiral Policy applies only to the Named Insured.  Peters and Beckers are not named insureds under the 2007-2008 Admiral Policy.  Therefore, in addition to the other coverages available to Wexford, there is coverage of $3 million available to Wexford under the 2007-2008 under the Personal and Advertising coverage of the 2007-2008 Policy.

44.     Put differently, the fact that Admiral switched grounds for coverage in response to Wexford's demand that it pay $3 million on Wexford's behalf so that Wexford could accept the October 8, 2012 settlement offer, actually demonstrates

yet another reason why there was still at least $3 million of coverage due Wexford at that time.

45.     Lacking the financial resources to fund Fox's $3.3 million settlement offer and to continue its dispute with Admiral regarding insurance coverage, and with a jury trial presenting a substantial risk of a judgment well in excess of the remaining limits under the Admiral Policies set to begin in November 2012, Wexford was left with no choice but to negotiate its own settlement with Fox.

46.     Wexford therefore agreed to a $14 million judgment (the "Consent Judgment"), and then assigned to Fox the right to seek recovery on that judgment from Admiral, as well as to seek all additional compensatory damages and punitive damages for which Admiral may be liable to Wexford.

47.     The Consent Judgment was entered on October 25, 2012.

48.     Fox and Wexford thereafter executed the assignment of Wexford's claims against Admiral, and a copy of that assignment is attached hereto as Exhibit A.

49.     Conflicts of interest existed between Admiral and Wexford due, *inter alia*, to the following:

> (a) Charysh had the opportunity to develop the facts in the case in a manner that could adversely impact Wexford's ability to claim coverage under both the 2006-2007 policy and the 2007-2008 policy, rather than only under the 2007-2008 policy.  In particular, there was a question as to whether Plaintiff received any of his dilantin seizure

medication during the 2006-2007 policy year. This fact implicated coverage in the 2006-2007 policy year, supplying additional grounds for coverage under the Personal and Advertising Injury coverage for that policy year.

(b) Admiral reserved its rights on the ground that it was not liable for any punitive damages awarded against Wexford.

(c) There were conflicts of interest amongst the insureds as to coverage, such that Admiral should have provided separate counsel under its duty to defend.

(d) There were conflicts of interest amongst the insureds once Admiral, via Charysh & Schroeder, rejected Plaintiff's offer to dismiss Defendant Becker from the suit for free in January 2012 in order to keep the January 2012 trial date. That act constituted bad faith against Becker and subjected Admiral to liability for a judgment in excess of policy limits for the claims against Becker. That potential liability incentivized Admiral to favor a settlement that removed Becker from the case, even at the expense of Wexford's ability to obtain a settlement.

50.     Admiral did not disclose any of the foregoing conflicts to Wexford, and did not offer to pay for, or reimburse the costs of, independent counsel for Wexford.

12

## COUNT I – BREACH OF CONTRACT (DUTY TO INDEMNIFY)

51.　Plaintiff incorporates by reference the allegations contained above.

52.　Wexford incurred $14 million in liability as a result of damages awarded by the Consent Judgment, and assigned to Plaintiff the right to recover those damages from Admiral.

53.　Wexford satisfied all conditions precedent to obtaining coverage under the Admiral Policies.

54.　Admiral is obligated under the Admiral Policies to pay Plaintiff in full up to the limits of the Admiral Policies, in the amount of at least $9 million, without any reservation of rights or conditions, for all of Wexford's liability by way of settlement, award, or judgment, in connection with Fox's case.

55.　Wexford requested that Admiral fulfill its obligation to pay Plaintiff the full amount of the policy limits available under the Admiral Policies, but Admiral refused.

56.　Admiral also failed to properly disclose and address the conflicts between Admiral and the insureds (Wexford, Becker, and Peters), and amongst the insureds.

57.　By refusing or otherwise failing to indemnify Wexford for liability incurred in connection with Fox's case, Admiral repudiated and breached its obligations under the policies.

58.　Admiral's conduct was vexatious and unreasonable.

59.　As a result of Admiral's breach of its contractual duty to indemnify, Wexford has incurred millions of dollars in damages.

13

60.    Pleading additionally and in the alternative, because Admiral failed to properly disclose and address the conflicts described above, Admiral is estopped from asserting any defense for coverage under the Admiral Policies.

## COUNT II – BAD FAITH FAILURE TO SETTLE

61.    Plaintiff incorporates by reference the allegations contained above.

62.    Admiral had a duty to consider equally its own interests and Wexford's interests, but Admiral breached that duty by, *inter alia*, the following conduct:

(a) Fox offered to settle his case against Wexford within policy limits, and Admiral refused to accept Fox's offer.

(b) Admiral's own counsel expressed his belief that Wexford had a less than 35% chance of prevailing on liability in Fox's case and that damages would likely be substantially in excess of policy limits.

(c) Admiral failed to keep Wexford fully apprised of Fox's willingness to settle and to properly advise Wexford concerning settlement negotiations and their implications.

63.    By all of the above, Admiral refused to pay policy limits that it knew were owing, with full awareness that the refusal would severely harm Wexford.

64.    Admiral's were vexatious, unreasonable, and in bad faith.

65.    Wexford suffered and was damaged as a direct, proximate and foreseeable result.

WHEREFORE, Plaintiff seeks judgment in his favor and against Admiral, and respectfully requests the entry of an order:

(a) awarding as damages the full limits of the Admiral Policies, in an amount of at least $9 million;

(b) awarding as damages the full amount of the Consent Judgment;

(c) awarding additional consequential damages suffered by Wexford, including without limitation damage to reputation, future lost profits, and attorneys' fees and costs; and

(d) awarding punitive damages and such other and further relief as this court deems equitable and just, including interest, costs, and statutory penalties and attorneys' fees available under 215 ILCS 5/155 for bringing this action.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial on all issues pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,


BY: /s/ Michael Kanovitz
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Michael Kanovitz
Scott Rauscher
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900