**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAY A. FOX, by and through his Guardian, ROSE FOX, | ) )  ) |
| Plaintiff, | ) |
| v. | ) ) |
| ADMIRAL INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

Case No. 12-cv-08740

**ADMIRAL INSURANCE COMPANY'S
<u>ANSWER TO COMPLAINT</u>**

Defendant ADMIRAL INSURANCE COMPANY, answers the Plaintiff's Complaint and states as follows:

<u>**INTRODUCTION**</u>

1.     In September 2009, Plaintiff Ray A. Fox ("Fox"), through his guardian Rose Fox, brought a lawsuit for damages against Wexford Health Sources, Inc. ("Wexford") and other parties in the United States District Court for the Northern District of Illinois, captioned as *Ray A. Fox v. Dr. P. Ghosh, et al.*, No. 09-C-5453.  The case sought damages caused by the denial of appropriate medical care while Fox was incarcerated at the Illinois Department of Corrections ("IDOC"), Northern Reception and Classification Center.

**Answer:**     Admiral Insurance admits the first sentence of paragraph 1.  With respect to the second sentence of paragraph 1, Admiral Insurance admits only that Fox makes allegations related to medical care during incarceration.   Admiral Insurance Company denies all other allegations of paragraph 1.

2.     Specifically, Fox suffers from epilepsy or a similar seizure disorder, and Wexford employees and others caused him to be denied necessary seizure medication. The denial of his seizure medication caused Fox to suffer seizures that led to severe, permanent brain damage, requiring around the clock care for the rest of his life.

**Answer:** On information and belief, Admiral Insurance admits the first sentence of paragraph 2. As to the second sentence of paragraph 2, on information and belief, Admiral Insurance admits that Plaintiff has sustained permanent injuries. Admiral Insurance lacks information or knowledge sufficient to form a belief as to the remaining allegations of paragraph 2.

3. After years of intensive litigation in Fox's case, the Court denied Wexford's motion for summary judgment in December 2011.

**Answer:** Admiral Insurance admits that the Court denied Wexford's motion for summary judgment in December 2011. Admiral Insurance denies the remaining characterizations in paragraph 3.

4. Given the seriousness of Fox's injuries and the egregiousness of Wexford's and its employees' actions, Wexford was exposed to a substantial likelihood of a jury verdict for many millions of dollars. The costs of Plaintiff's future care alone came to almost $12 million.

**Answer:** Admiral Insurance denies that Wexford or its employees took egregious actions. Admiral insurance denies the characterization that Wexford faced a "substantial likelihood" of a jury verdict. Admiral Insurance admits that Fox was seeking a multi-million dollar award. Admiral Insurance denies that Fox was or is entitled to such an award. Admiral Insurance denies any remaining allegations of paragraph 4.

5. Defendant Admiral Insurance Company ("Admiral") provided Liability Insurance Policies (the "Admiral Policies") to Wexford that covered the claims alleged in Fox's lawsuit against Wexford. The 2006-2007 Admiral policy is numbered E0000000615-10, with effective dates of October 1, 2006 to October 1, 2007. The 2007-2008 Admiral policy is numbered E0000000615-11, with effective dates of October 1, 2007 to October 1, 2008.

**Answer:** Admiral Insurance admits only that it entered into the described liability insurance contracts with Wexford. Admiral Insurance denies all other allegations of paragraph 5.

6. Despite Plaintiff's and Wexford's best efforts to reach a reasonable settlement, the real possibility that Wexford faced a jury award substantially in excess of policy limits, and the fact that Admiral's insurance policies unquestionably covered the conducted alleged in Fox's lawsuit, Admiral refused to settle within the policy limits, in bad faith.

**Answer:** Denied.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of the State of Illinois and Defendant is a citizen of Delaware and New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

**Answer:** Admitted.

8. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

**Answer:** Admitted.

## PARTIES AND RELATED ENTITIES

9. Plaintiff Ray A. Fox and his guardian Rose Fox are citizens of Illinois, residing in Cook County.

**Answer:** Admitted.

10.     Defendant Admiral Insurance Company is a Delaware corporation, with its principal place of business in New Jersey.

**Answer:**     Admitted.


11.     Non-party Wexford is a contractor to the State of Illinois, retained to provide medical care to inmates incarcerated in the IDOC.

**Answer:**     Admitted.


## FACTS

12.     In September of 2007, a Wexford employee prescribed Fox insufficient anti-seizure medication while he was incarcerated in IDOC.

**Answer:**     Admiral Insurance admits only that Fox has made these allegations against Wexford.  Admiral Insurance lacks information or knowledge sufficient to form a belief as to the truth of paragraph 12.


13.     When Fox ran out of the prescription, Wexford employees and others for whom Wexford was responsible failed to give him additional medication despite his pleas to them for more medication.  Pleading in the alternative, Wexford employees and others for whom Wexford was responsible failed to provide Plaintiff with his medication in September of 2007 and ignored his pleas for that medication in October, 2007.

**Answer:**     Admiral Insurance admits only that Fox has made these allegations against Wexford.  Admiral Insurance lacks information or knowledge sufficient to form a belief as to the truth of paragraph 13.


14.     Wexford's inaction, *inter alia*, led to Fox suffering severe seizures, which caused permanent, serious injuries.

4

**Answer:**    Admiral Insurance admits only that Fox has made these allegations against Wexford.   On information and belief, Admiral Insurance admits that Fox has sustained permanent injuries.   Admiral Insurance lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations paragraph 14.

15.    Fox's legal guardian subsequently filed suit on his behalf, against Wexford, certain Wexford employees, and others.

**Answer:**    Admitted.

16.    At all relevant times, the Admiral Policies provided Wexford with at least nine million dollars of insurance coverage for the claims alleged in Fox's case.

**Answer:**    Denied.

17.    Specifically, the Admiral Policies in the 2006-2007 and 2007-2008 policy periods each provide $3 million in "Long-Term Healthcare Facilities Professional Liability" coverage (coverage D) for each "medical incident," and an additional $3 million in coverage for each "occurrence" in "Personal and Advertising Injury Liability" coverage (coverage B), and both of those coverage provisions applied to Fox's injuries.

**Answer:**    Admiral Insurance admits the insurance contracts between it and Wexford that were in effect in 2006-07 and 2007-08 provide a limit of $3 million per occurrence under the Personal and Advertising Injury coverage and a limit of $3 million for each medical incident under the Long-Term Healthcare facility Professional Liability coverage.  Admiral denies that more than one $3 million limit applies to the lawsuit filed by Fox.  Admiral denies any other allegations of paragraph 17.

18.    The "Long-Term Healthcare Facilities Professional Liability" coverage applies to amounts that Wexford (or any additional insureds) "becomes legally obligated

to pay as damages because of 'bodily injury' to which this insurance applies, caused by a 'medical incident' occurring in the course of performing professional services for your long-term healthcare facility."

**Answer:**     Admiral Insurance admits that the quoted language appears in the insurance contract.  Admiral Insurance denies any other allegation of paragraph 18.

19.     The "Personal and Advertising Injury Liability" applies to amounts that Wexford (or any additional insureds) "becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

**Answer:**     Admiral Insurance admits that the quoted language appears in the insurance contract.  Admiral Insurance denies any other allegation of paragraph 19.

20.     Where an injury satisfies the definitions of both "Long-Term Healthcare Facilities Professional Liability" and "Personal and Advertising Injury Liability," the Admiral Policies provide for coverage under each.  Put differently, there is $6 million in coverage available under each policy for an injury that satisfies the definitions of both "Long-Term Healthcare Facilities Professional Liability" and "Personal and Advertising Injury Liability."

**Answer:**     Denied.

21.     Additionally, Fox suffered injury in both September 2007 and October 2007.  Accordingly, he was entitled to coverage in both policy years, with the 06-07 policy applying to the conduct in September and the 07-08 policy applying in October.

**Answer:**     Denied.

22.     In November 2009, Admiral sent a letter to Wexford agreeing to defend Wexford in Fox's case under the "Long-Term Healthcare Facilities Professional Liability" portion of the 2007-2008 policy, but reserving its right to seek a declaratory judgment regarding whether the Admiral Policies covered punitive damages that Fox sought against Wexford.

**Answer:** Admiral Insurance admits that it sent a letter to Wexford in November 2009 that cited to the professional liability coverage of the 2007-08 policy. Admiral Insurance further admits that it agreed to defend Wexford against an amended complaint filed in the Fox Litigation and reserved the right to decline coverage for punitive damages. Admiral Insurance denies any additional allegations of paragraph 22.

23. In that letter to Wexford, Admiral also explained that it would not be liable for any amount in excess of the Admiral Policy limits, so that "should you choose, it is your right to engage your own attorney, at your own expense, to protect you against any uninsured interest. The attorney we have retained to defend you will coordinate the defense with your personal attorney."

**Answer:** Admiral Insurance admits that the quoted language appears in the November 2009 letter. Admiral Insurance denies that paragraph 23 is a complete recitation of all topics addressed in that letter. Admiral Insurance denies any remaining allegations of paragraph 23.

24. Admiral did not offer to reimburse Wexford for expenses it might incur by hiring its own counsel.

**Answer:** Admitted.

25. Admiral retained Michael Charysh, of Charysh & Schroeder Ltd., to defend Wexford and two individual defendants (Dr. Constantine Peters and Nurse James F. Becker) who were Wexford employees and additional insureds on the Admiral Policies.

**Answer:** Admitted.

26.     Through Charysh, Admiral controlled Wexford's, Becker's and Peters's defense and all settlement negotiations

**Answer:**     Admiral Insurance admits that it exercised its right to control the defense of its insureds.   Admiral Insurance denies that it controlled all settlement negotiations.

27.     At no point did Admiral explain that its chosen counsel had a conflict of interest in representing Wexford, the additional insureds, and Admiral.

**Answer:**     Admiral Insurance denies that retained defense counsel represented Admiral Insurance.  Admiral Insurance further denies that retained defense had a conflict of interest in representing Wexford, Becker and Peters; therefore there was no conflict to explain.   Admiral Insurance denies any remaining allegations of paragraph 27.

28.     On January 11, 2012, Fox's counsel sent a letter to Charysh stating that the Admiral Policies were applicable to Fox's claims against Wexford, Becker, and Peters, and making the following alternative settlement offers: (a) Fox would settle with all three defendants for a total of $5.99 million; (b)  Fox would settle with either Becker or Peters, in their individual capacities only, for $2.99 million; or (c) Fox would waive his claim for punitive damages against Becker and/or Peters if they would agree to have a negligence instruction submitted to the jury despite the fact that Fox may not have pleaded such a claim.

**Answer:**     Admitted.

29.     The first of the alternative settlement offers set forth in the January 11, 2012 letter, to settle with all three defendants for $5.99 million, would have settled all claims against Wexford, Becker, and Peters for less than the limits of the Admiral Policies.  Nonetheless, Admiral rejected the offer.

**Answer:** Admiral denies the first sentence of paragraph 29. Admiral admits that it did not agree to settle the suit against the Wexford parties on the terms demanded in the first alternative of the January 11, 2012 letter.

30. When Admiral rejected Plaintiff's January 11, 2012 settlement offer, the case was set for trial on January 23, 2012. On January 20, 2012, Charysh & Schroeder brought an emergency motion to move the trial date based on Becker's supposed inability for health reasons to travel from Iowa to Illinois. In order to keep the trial date, Plaintiff offered to dismiss Becker with prejudice for no money so that the case could go forward as schedule, and further offered to travel to Iowa to take video-testimony immediately or to let Becker testify by video-conference. Further, the court located a video-conference location near Becker's home that was available for trial at minimal cost. Charysh & Schroeder nevertheless turned down the offer to dismiss Becker for free in order to have the trial date moved.

**Answer:** Admiral Insurance admits that a trial date was scheduled form January 23, 2012. Admiral Insurance admits that Mr. Becker's health conditions made it necessary to seek a new trial date. Admiral Insurance admits that Plaintiff offered certain concessions to keep the January 23, 2012 trial date. Admiral Insurance denies all other allegations of paragraph 30.

31. Settlement negotiations resumed when Fox's counsel emailed Charysh another settlement letter on July 10, 2012, explaining that Admiral had stood in the way of all previous settlement negotiations, including by misstating the applicable policy limits and by refusing a previous offer by Fox to dismiss all claims against Becker for free, simply to keep the previously set January 2012 trial date. Fox's counsel also stated that actual damages in the case could exceed $20 million, so that Admiral's bad faith refusal to settle was placing Charysh's clients in serious jeopardy.

**Answer:** Admiral Insurance admits only that Fox's counsel made the assertions stated in the July 10, 2012 letter. Admiral Insurance denies the substance of those assertions and further denies any breach of duty to Wexford.

32.     In the July 10, 2012 letter, Fox's counsel made the following settlement demand, offering to release all claims against Wexford, Becker, and Peters, pursuant to the following terms: (a) Admiral would pay $3 million to Fox; (b) Wexford, Becker, and Peters would remain parties at trial; (c) Fox would enforce any judgment he obtained against Wexford, Becker, or Peters only up to the amount of any additional insurance or indemnity available to them, plus any amounts recovered from the broker who placed Wexford's 2006 and 2007 insurance policies, plus $100,000 for each million dollars of the amount of the judgment that exceeds the amounts paid by Admiral and the other sources of potential recovery set forth in the July 10 letter; and (d) Fox would not seek punitive damages from Wexford, Becker, or Peters.

**Answer:**     Admiral Insurance admits that Fox's counsel made a settlement demand in the July 10, 2012 letter similar to what is described in paragraph 32.  Admiral Insurance denies that paragraph 32 completely describes the settlement demand.

33.     The July 10 letter explained that the settlement offer was open until July 17, 2012.

**Answer:**     Admitted.

34.     On July 12, 2012, Admiral, acting through David Carlson, an attorney that Admiral had retained to negotiate the Fox case, rejected the July 10 offer without Wexford's input, and without even informing Wexford that it planned to reject the settlement.  Had Wexford been properly advised, it would have made a reasonable business decision about contributing money to the settlement at that time.

**Answer:**     Admiral Insurance admits that it retained attorney David Carlson to assist in negotiations to settle the claims against its insureds.  Admiral Insurance admits that Mr. Carlson communicated to Fox's counsel that the July 10, 2012 demand was rejected.  Admiral Insurance denies that Wexford was not made aware of the July 10 settlement demand.  Admiral Insurance lacks information or knowledge sufficient to form a belief as to the remaining allegations of paragraph 34.

35.    After further negotiations, Admiral offered to settle all claims against Becker and Peters (but not Wexford) for $3 million, and Fox accepted the offer on August 17, 2012.

**Answer:**    Admitted.

36.    In making the $3 million offer to settle the claims against Becker and Peters, Admiral explained to Wexford that Admiral's counsel estimated that Wexford had "less than a 35%" chance of prevailing on liability, and that "it is anticipated that an adverse verdict would likely include compensatory damages substantially in excess of the $3 million limits of our policy. Further a verdict may well include substantial punitive damages."

**Answer:**    Admiral Insurance admits that the quoted language appears in August 14, 2012 email correspondence from Admiral Insurance to Wexford. Admiral Insurance denies that paragraph 36 is a complete recitation of that email. Admiral Insurance denies any remaining allegations of paragraph 36.

37.    Admiral also asked whether Wexford would "contribute to the settlement offer so that Admiral could present the offer as a 'global settlement offer.'" Admiral and Wexford then discussed what amount of contribution from Wexford might result in a global settlement, with Admiral stating its belief that Wexford would be required to contribute an amount in the seven figures. During that discussion, Admiral did not mention the terms of the July 10, 2012 settlement offer from Fox, which could have resulted in a contribution from Wexford well under seven figures had Admiral contributed the $3 million that it paid for Becker and Peters shortly after rejecting the July 10, 2012 offer.

**Answer:**    Admiral Insurance admits the first sentence of paragraph 37. With respect to the second sentence of paragraph 37, Admiral Insurance admits discussing contributions from Wexford to reach global settlement. Admiral denies that Wexford was not made aware of the July 10, 2012 settlement demand. Admiral Insurance lacks information or knowledge sufficient to form a belief as to the last sentence of paragraph 37.

38.     After Fox accepted Admiral's offer to settle all claims against Becker and Peters for $3 million on August 17, 2012, Admiral wrote Wexford to explain its position that the $3 million payment exhausted all available insurance, but that it would continue to pay for Wexford's defense, but only through trial, "as a courtesy."

**Answer:**     Admitted.


39.     Wexford responded by stating that it disagreed with Admiral's position that only $3 million in insurance was available, and stating that "Admiral has a continuing duty to properly defend Wexford Health through the entirety of this judicial course."

**Answer:**     Admiral admits that Wexford stated that position. Admiral denies

that Wexford's position is correct.


40.     On October 8, 2012, Fox offered to settle all claims against Wexford for $3 million to be paid on November 30, 2012, and an additional payment of $300,000 due in 2013 or later. Wexford forwarded that offer to Admiral, stated that Wexford agreed with all terms of the settlement demand, and explained that $3 million was still available under the Admiral Policies.

**Answer:**     Admiral Insurance admits that the described settlement demand

from Fox was communicated to it by Wexford. Admiral Insurance further admits that

Wexford stated its opinion that it believed an additional $3 million coverage limit was

available. Admiral denies that Wexford's opinion is or was correct. Admiral Insurance

denies any remaining allegations of paragraph 40.


41.     Admiral rejected the October 8, 2012 settlement demand, explaining to Wexford its belief that its previous $3 million payment to settle the claims against Becker and Peters had exhausted the coverage available for Fox's claims. And contrary to its November 2009 reservation of rights and the position it had consistently taken since then, Admiral also informed Wexford that its previous $3 million payment was made under the Personal and Advertising Coverage provision of the 2007-2008 Admiral Policy, and not the Long-Term Healthcare Facilities provision.

**Answer:** Admiral Insurance admits the first sentence of paragraph 41. Admiral Insurance admits that its letter of October 12, 2012 states that the settlement of the claims against Peters and Becker was made under the Personal and Advertising Injury coverage. Admiral Insurance denies all remaining allegations of paragraph 41.

42. Admiral is estopped from claiming that the $3 million paid in settlement was/is being made under the Personal and Advertising coverage of the 2007-2008 Policy. Admiral is also estopped from claiming that policy limits under the Personal and Advertising coverage of the 2007-2008 Policy are not due and payable for the allegations in the Fox lawsuit.

**Answer:** Denied.

43. The Personal and Advertising injury coverage of the 2007-2008 Admiral Policy applies only to the Named Insured. Peters and Beckers are not named insureds under the 2007-2008 Admiral Policy. Therefore, in addition to the other coverages available to Wexford, there is coverage of $3 million available to Wexford under the 2007-2008 under the Personal and Advertising coverage of the 2007-2008 Policy.

**Answer:** Denied.

44. Put differently, the fact that Admiral switched grounds for coverage in response to Wexford's demand that it pay $3 million on Wexford's behalf so that Wexford could accept the October 8, 2012 settlement offer, actually demonstrates yet another reason why there was still at least $3 million of coverage due Wexford at that time.

**Answer:** Denied.

45. Lacking the financial resources to fund Fox's $3.3 million settlement offer and to continue its dispute with Admiral regarding insurance coverage, and with a jury trial presenting a substantial risk of a judgment well in excess of the remaining limits under the Admiral Policies set to begin in November 2012, Wexford was left with no choice but to negotiate its own settlement with Fox.

**Answer:** Admiral Insurance admits that after its coverage limit was exhausted, Wexford had the option to reach a reasonable settlement with Fox. Admiral Insurance denies that settlement was Wexford's only option. Admiral Insurance denies that the settlement reached was reasonable. Admiral Insurance denies any other allegations of paragraph 45.

46. Wexford therefore agreed to a $14 million judgment (the "Consent Judgment"), and then assigned to Fox the right to seek recovery on that judgment from Admiral, as well as to seek all additional compensatory damages and punitive damages for which Admiral may be liable to Wexford.

**Answer:** Admiral Insurance admits that Wexford entered into a $14 million Consent Judgment with Fox. Admiral Insurance further admits that, pursuant to terms and conditions, Wexford assigned its right to seek recovery on that judgment from Admiral. Admiral Insurance denies that the assignment of rights is effective, as conditions precedent to the assignment have not yet occurred. Admiral Insurance denies any other allegations of paragraph 46.

47. The Consent Judgment was entered on October 25, 2012.

**Answer:** Admitted.

48. Fox and Wexford thereafter executed the assignment of Wexford's claims against Admiral, and a copy of that assignment is attached hereto as Exhibit A.

**Answer:** Admitted.

49. Conflicts of interest existed between Admiral and Wexford due, *inter alia*, to the following:

(a)     Charysh had the opportunity to develop the facts in the case in a manner that could adversely impact Wexford's ability to claim coverage under both the 2006-2007 policy and the 2007-2008 policy, rather than only under the 2007-2008 policy.  In particular, there was a question as to whether Plaintiff received any of his dilantin seizure medication during the 2006-2007 policy year.  This fact implicated coverage in the 2006-2007 policy year, supplying additional grounds for coverage under the Personal and Advertising Injury coverage for that policy year.

(b)     Admiral reserved its rights on the ground that it was not liable for any punitive damages awarded against Wexford.

(c)     There were conflicts of interest amongst the insureds as to coverage, such that Admiral should have provided separate counsel under its duty to defend.

(d)     There were conflicts of interest amongst the insureds once Admiral, via Charysh & Schroeder, rejected Plaintiff's offer to dismiss Defendant Becker from the suit for free in January 2012 in order to keep the January 2012 trial date.  That act constituted bad faith against Becker and subjected Admiral to liability for a judgment in excess of policy limits for the claims against Becker.  That potential liability incentivized Admiral to favor a settlement that removed Becker from the case, even at the expense of Wexford's ability to obtain a settlement.

**Answer:**     Denied.


50.     Admiral did not disclose any of the foregoing conflicts to Wexford, and did not offer to pay for, or reimburse the costs of, independent counsel for Wexford.

**Answer:**     Admiral Insurance denies that the alleged conflicts existed; therefore, there was no conflict to disclose.  Admiral Insurance admits it did not offer to pay for independent counsel of Wexford.


## COUNT I – BREACH OF CONTRACT (DUTY TO INDEMNIFY)

51.     Plaintiff incorporates by reference the allegations contained above.

15

**Answer:** Admiral Insurance incorporates by reference its answers to the allegations above.

52. Wexford incurred $14 million in liability as a result of damages awarded by the Consent Judgment, and assigned to Plaintiff the right to recover those damages from Admiral.

**Answer:** Admiral Insurance denies that Wexford incurred $14 million in liability under the Consent Judgment and assignment of rights. Admiral Insurance denies that the assignment of rights is effective, as conditions precedent to the assignment have not yet occurred.

53. Wexford satisfied all conditions precedent to obtaining coverage under the Admiral Policies.

**Answer:** Admiral Insurance admits that Wexford complied with conditions precedent to coverage. Admiral Insurance denies that Wexford is entitled to additional coverage above the $3 million policy limit that has been exhausted by commitment to settle the claims against Peters and Becker.

54. Admiral is obligated under the Admiral Policies to pay Plaintiff in full up to the limits of the Admiral Policies, in the amount of at least $9 million, without any reservation of rights or conditions, for all of Wexford's liability by way of settlement, award, or judgment, in connection with Fox's case.

**Answer:** Denied.

55. Wexford requested that Admiral fulfill its obligation to pay Plaintiff the full amount of the policy limits available under the Admiral Policies, but Admiral refused.

**Answer:** Admiral Insurance specifically denies that it had any obligation to pay Plaintiff any amount in excess of the $3 million coverage limit that was exhausted by the commitment to settle the claims against Peters and Becker. The allegations of paragraph 55 are not made in reference to any time period; therefore, Admiral Insurance lacks information or knowledge sufficient to form a belief as to any other allegations of paragraph 55.

56.     Admiral also failed to properly disclose and address the conflicts between Admiral and the insureds (Wexford, Becker, and Peters), and amongst the insureds.

**Answer:** Admiral Insurance denies that the alleged conflicts existed; therefore, there was no conflict to disclose.  Admiral denies any remaining allegations of paragraph 56.

57.     By refusing or otherwise failing to indemnify Wexford for liability incurred in connection with Fox's case, Admiral repudiated and breached its obligations under the policies.

**Answer:** Denied.

58.     Admiral's conduct was vexatious and unreasonable.

**Answer:** Denied.

59.     As a result of Admiral's breach of its contractual duty to indemnify, Wexford has incurred millions of dollars in damages.

**Answer:** Denied.

60.    Pleading additionally and in the alternative, because Admiral failed to properly disclose and address the conflicts described above, Admiral is estopped from asserting any defense for coverage under the Admiral Policies.

**Answer:**    Denied.


## COUNT II – BAD FAITH FAILURE TO SETTLE

61.    Plaintiff incorporates by reference the allegations contained above.

**Answer:**    Admiral Insurance incorporates by reference its answers to the allegations above.


62.    Admiral had a duty to consider equally its own interests and Wexford's interests, but Admiral breached that duty by, *inter alia*, the following conduct:

   (a)    Fox offered to settle his case against Wexford within policy limits, and Admiral refused to accept Fox's offer.

   (b)    Admiral's own counsel expressed his belief that Wexford had a less than 35% chance of prevailing on liability in Fox's case and that damages would likely be substantially in excess of policy limits.

   (c)    Admiral failed to keep Wexford fully apprised of Fox's willingness to settle and to properly advise Wexford concerning settlement negotiations and their implications.

**Answer:**    Admiral Insurance denies that it breached any duty to Wexford.


63.    By all of the above, Admiral refused to pay policy limits that it knew were owing, with full awareness that the refusal would severely harm Wexford.

**Answer:**    Denied.


64.    Admiral's were vexatious, unreasonable, and in bad faith.

**Answer:**     Denied.

65.     Wexford suffered and was damaged as a direct, proximate and foreseeable result.

**Answer:**     Denied.

## AFFIRMATIVE DEFENSES

1.     For its affirmative defenses, Admiral Insurance Company states as follows;

### FIRST AFFIRMATIVE DEFENSE
### LACK OF SUBJECT MATTER JURISDICTION (RIPENESS)

2.     The assignment of rights on which this declaratory judgment action is based is not effective until there is a final order entered by the Cook County Probate Court that approves the settlement.  The assignment states in relevant part:

**3.     ASSIGNMENT OF RIGHTS**

(a)     Following final approval of the Confidential Settlement Agreement by the Probate Court and the order and entry of the Consent Judgment by the Court in the Fox Claim, Wexford hereby assigns to Fox whatever rights Wexford may have in respect of insurance coverage for the Fox Claim under the Admiral Policies. ....

          *          *          *

(c)     Upon any assignment pursuant hereto, Fox shall assume sole responsibility for any and all legal fees and litigation costs related to any coverage litigation relating to indemnity under the Admiral Policies.  If final approval of this Settlement is not obtained, all right, title and interest to the policies and their proceeds, including the right to pursue the aforementioned declaratory judgment and/or damages action with respect to coverage under the policies and to

recover funds available for previously paid under those policies, shall remain with Wexford.

3.      At the time of this answer and affirmative defenses, the electronic docket of the Cook County Probate Court does not reflect a final order approving the settlement in Case No. 09 P 1782.

4.      Until the final order is entered by the Cook County Probate Court, Fox does not have the right to seek declaratory judgment against Admiral Insurance.

5.      If final approval of the settlement between Fox and Wexford is not obtained, Wexford, not Fox, will have the right, if it chooses to do so, to pursue declaratory relief against Admiral Insurance.

6.      Therefore, there is currently no ripe dispute between Fox and Admiral Insurance.


WHEREFORE, for the foregoing reasons, Admiral Insurance Company moves this Honorable Court to deny the relief sought in the Complaint, to enter judgment in Admiral Insurance Company's favor, and for such other relief that the Court deems just in the circumstances.


Respectfully submitted,
ADMIRAL INSURANCE COMPANY

  /s/ Daniel G. Litchfield
One of Its Attorneys


Daniel G. Litchfield
Omar S. Odland
LITCHFIELD CAVO LLP

303 West Madison Street, Suite 300
Chicago, Illinois 60606-3300
(312) 781-6669 (Litchfield)
(312)781-6660 (Odland)
(312) 781-6630 facsimile
Attorneys for Admiral Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2012, I electronically filed the foregoing Defendant Admiral Insurance Company's Answer to Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Arthur R. Loevy
Jonathan I. Loevy
Scott R. Rauscher
Michael I. Kanovitz
Loevy & Loevy
312 North May Street, Suite 100
Chicago, Illinois 60607
loevylaw@loevy.com
jon@loevy.com
scott@loevy.com
mike@loevy.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

By:___s/ Daniel G. Litchfield_____
LITCHFIELD CAVO LLP
303 West Madison Street, Suite 300
(312) 781-6660
(312) 781-6630 facsimile
odland@litchfieldcavo.com