RAY A. FOX,

      Plaintiff,

    v.

ADMIRAL INSURANCE CO.,

      Defendant.

No. 12 CV 8740

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Admiral moves for reconsideration of the memorandum opinion and order, [153],[1] denying the parties' cross-motions for summary judgment. The parties also briefed the issue of whether Fox has the right to a jury trial on the reasonableness of his settlement with Wexford. The motion to reconsider, [156], is granted in part with certain clarifications to the opinion described below, and Fox has the right to a jury trial on the reasonableness of the Wexford settlement.

## I.     Motion for Reconsideration

The background of this case and the claims argued in the parties' cross-motions for summary judgment are described in the summary judgment opinion, [153], and need not be repeated here. Admiral moves for reconsideration on three specific issues addressed in the summary judgment opinion, arguing that the opinion was manifestly erroneous in: (1) comparing the allegations of the underlying complaint to the terms of the insurance policies to determine Admiral's duty to

---

[1] Bracketed numbers refer to entries on the district court docket.

indemnify, (2) finding that Admiral committed anticipatory breach of its duty to defend through its pretrial refusal to defend Wexford for post-trial activities, and (3) holding that Admiral is not entitled to a setoff because—in the context of the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2, and Illinois's double recovery rule—Wexford's negotiated consent judgment was a settlement and not an adverse judgment on the merits. Admiral contends that these determinations were both incorrectly decided and decided by the court sua sponte.

### A.    Legal Standard[2]

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Instead, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 1269. A "manifest error" occurs when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning

---

[2] Admiral cites to Federal Rule of Civil Procedure Rule 59(e) for its motion to reconsider, but Admiral's motion for reconsideration is governed under Rule 54(b) because the summary judgment ruling did not adjudicate all claims and final judgment has not been entered. *See, e.g., Selective Ins. Co. of S. Carolina v. City of Paris*, 769 F.3d 501, 506–07 (7th Cir. 2014) (Rule 54(b) applies to judgments which do not adjudicate all claims, but if final judgment on all claims has been entered, the only avenues of relief are Rules 59(e) and 60(b)). The analysis for a motion to reconsider is the same under either rule, however. *See, e.g., Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (motion for reconsideration prior to entry of final judgment serves limited function of correcting manifest errors of law or fact or to present newly discovered evidence, but not to present new legal theories).

but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.*

When parties have an opportunity to respond to legal issues raised at summary judgment, subsequent rulings on those issues are not sua sponte. *See, e.g.,* *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807–08 (7th Cir. 2000) (grant of summary judgment on seven claims for which the movant did not explicitly request relief was not sua sponte where non-movant had proper notice that the court was being asked to consider an accounting issue indirectly dispositive of those other claims). Admiral acknowledges that the parties' cross-motions for summary judgment raised the issues of indemnification, the duty to defend, and setoff, [156] at 2, but asserts that the parties only addressed these issues generally or in certain aspects, and that the opinion included legal reasoning outside the scope of the specific arguments presented by the parties. Not so. The parties' lengthy cross-motions for summary judgment raised many issues, and the summary judgment rulings on indemnification, the duty to defend, and setoff were well within "the adversarial issues presented to the Court by the parties." *Bank of Waunakee*, 906 F.2d at 1191. In addition, both parties declined to file reply briefs. [147]. Arguments that could have been raised in such a reply do not merit reconsideration. *See Caisse Nationale*, 90 F.3d at 1270.

## B. Indemnification

In the cross-motions for summary judgment, Fox sought to recover the remaining limits of insurance that he asserted were available to Wexford under the

policies, while Admiral argued that its $3 million settlement payment on behalf of Wexford's employees exhausted Admiral's duty to indemnify. The summary judgment opinion construed the 2006–2007 and 2007–2008 insurance policies and compared them with the allegations of Fox's underlying complaint to determine whether any coverage remained, and therefore whether Admiral's duty to indemnify might extend beyond its earlier $3 million settlement. The opinion held that Fox's *Monell* claim against Wexford fell under personal injury liability coverage B for both policy years and that Admiral had waived its ability to assert non-coverage for 2007–2008 professional services liability coverage (coverage D)—meaning that Wexford had $6 million remaining in coverage. [153] at 13–27. The opinion further held, however, that Fox could not collect from Admiral without establishing that Wexford's settlement with Fox was reasonable—a determination which requires Fox to prove at trial that the settlement was made in "reasonable anticipation of liability." *United States Gypsum Co. v. Admiral Ins. Co.*, 268 Ill.App.3d 598, 625 (1st Dist. 1994). Admiral insists that the analysis comparing the underlying complaint to the insurance policies was raised sua sponte by the court and that Admiral's duty to indemnify should have been determined by comparing the insurance policies to the "actual facts." According to Admiral, these "actual facts" undisputedly establish that no other coverage was triggered by Fox's underlying lawsuit.

The scope of Admiral's duty to indemnify—couched by Fox in terms of garnishment and remaining limits of coverage, and by Admiral in terms of policy

defenses and exhaustion of coverage—was at the heart of the parties' cross-motions to dismiss. Determining parties' rights and duties under the insurance policies are questions of law. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391 (1993) ("The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment."). District courts are not restricted to the case law identified by parties, and so it was not a manifest error to cite applicable law not specifically identified in the parties' cross-motions for summary judgment.

As Admiral correctly points out, an insurer's duties to defend and to indemnify are separate and distinct. The duty to indemnify is narrower than the duty to defend. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 127 (1992). The duty to defend arises when allegations in the underlying complaint fall potentially within coverage. *Id.* at 125. In contrast, the duty to indemnify "is only ripe for consideration if the insured has already incurred liability in the underlying claim against it"—i.e., through judgment or settlement—and "arises if the insured's activity and the resulting loss or damage *actually* fall within the [omitted] policy's coverage." *Id.* at 127–28 (emphasis in original). According to Admiral, by comparing the insurance policies to the underlying complaint, I mistakenly applied the analysis for determining the duty to defend, not the analysis for determining the duty to indemnify. Instead, Admiral would have Fox prove Wexford's liability under the "actual facts" in the underlying case in order to be indemnified by Admiral. But

Illinois courts apply a slightly different analysis to determine the duty to indemnify when the insured settles prior to trial, since no "actual facts" have been determined at a trial.

Illinois law holds that "[i]n order to recover a settlement, the insured need not establish actual liability to the party with whom it has settled so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in an amount reasonable in view of the size of possible recovery and degree of probability of claimants success against the [insured]." *Federal Ins. Co. v. Binney & Smith, Inc.*, 393 Ill.App.3d 277, 282 (1st Dist. 2009) (quoting in part *U.S. Gypsum*, 268 Ill.App.3d at 625–26 (internal marks omitted)); *see also Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 351–52 (7th Cir. 2010) ("Consistent with the Illinois policy that a coverage action should not require the insureds to conclusively establish their own liability in the interest of promoting settlement, we think the proper inquiry is whether the claims were *not even potentially* covered by the insurance policy."). Essentially, "[i]f an insured settles an underlying claim prior to verdict, it must show that it settled an otherwise covered loss in 'reasonable anticipation of liability,'" *Federal Ins.*, 393 Ill.App.3d at 282 (quoting *U.S. Gypsum*, 268 Ill.App.3d at 625), but need not prove actual liability.

To clarify, Fox (as Wexford's assignee) is not entitled to indemnification from Admiral for the Fox-Wexford settlement solely on the basis of Fox's complaint, without having to prove anything else. Fox's claims, as alleged, fell within additional provisions in the policies, meaning that the policy limits had not been

exhausted and that Admiral had the duty to indemnify Fox for that remaining coverage *if* Fox proved that the Wexford settlement was reached in "reasonable anticipation of liability." It would have been clearer to say that, based on the construction of the policies and Fox's allegations, Fox's claims against Wexford were *not excluded* from personal injury coverage B for both policy years or from professional services coverage D for 2007–2008, but that Fox cannot recover from Admiral until he proves reasonable anticipation of liability. Whether Wexford reasonably anticipated liability was and is sufficiently disputed to preclude both motions summary judgment. There is evidence in the record to suggest that Wexford was concerned about the viability of its defense and believed its chance of success was less than 50%. *See* [153] at 35. In its motion for reconsideration, Admiral repeats the same, largely disputed, facts about whether Wexford would have prevailed, but I did not misapprehend Admiral's point. Summary judgment was properly denied because the prospect of liability cannot be resolved as a matter of law.[3]

Because the contours of Wexford's insurance coverage were contested between the parties and were ripe for disposition at summary judgment, the summary judgment opinion addressed whether Fox's underlying claims, as alleged, fell within the disputed coverage provisions. This was important to determining

---

[3] Admiral repeats its argument that professional services coverage D could not apply to Fox's underlying complaint because there was no medical malpractice claim, but Admiral does not seek reconsideration of the ruling that this policy defense was waived when Admiral continued to defend under that coverage provision after it was clear that Fox was not asserting a malpractice claim. [153] at 16–18. Admiral is not entitled to reconsideration of the summary judgment ruling on waiver of defenses to professional services coverage D.

whether any coverage even remained available to Wexford or if the coverage limits were indeed exhausted by Admiral's $3 million settlement on behalf of Wexford's employees. *See, e.g., Crum & Forster*, 156 Ill.2d at 391 ("The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.").

Admiral is correct that *National American Insurance Co. v. Artisan & Truckers Casualty Co.*, 796 F.3d 717 (7th Cir. 2015) analyzes the duty to defend, not the duty to indemnify, and therefore should not have been cited for the proposition that the pleadings determine the duty to indemnify. This mistake on my part, however, was not the "wholesale disregard, misapplication, or failure to recognize controlling precedent" required to show a manifest error of law requiring reconsideration. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Because, as made clear in this opinion, Admiral is not required to indemnify Fox unless Fox proves a "reasonable anticipation of liability," the denial of summary judgment comported with the established rule that the "duty to indemnify is determined once liability has been affixed." *Artisan & Truckers*, 796 F.3d at 724.

Under Illinois law, when an insured settles before trial, comparing the underlying complaint allegations to insurance policies is appropriate for determining whether particular claims are covered. *See Maryland Cas. Co. v. Dough Mgmt. Co.*, 2015 IL App (1st) 141520, ¶¶ 49–53 (determining that insurer had no duty to indemnify insured's pretrial settlement by comparing allegations of

underlying complaint to insurance policy and finding the claims excluded from coverage); *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶¶ 51–59 (granting summary judgment in favor of insured on insurer's duty to indemnify because insurance policy covered claim in underlying complaint; determination of whether insured settled for a reasonable amount in reasonable anticipation of liability was to be made by trial court on remand); *see also Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 2014 IL App (1st) 113755, ¶¶ 81–91 (where settlement for both covered and non-covered claims was undisputedly made in anticipation of liability, the appellate court compared the underlying complaint allegations to the insurance policy to determine whether covered claims were the "primary focus" of the underlying complaint); *Am. Home Assur. Co. v. Dykema, Gossett, Spencer, Goodnow & Trigg*, 811 F.2d 1077, 1083–85 (7th Cir. 1987) (the "first inquiry" for determining insurer's duty to indemnify insured's settlement was to determine whether the underlying claims were covered by the insurance policy; "[b]ecause the case was settled before trial, [the complaint's] allegations are accepted as true for purposes of determining insurance coverage") (applying Michigan law).

While the summary judgment opinion may have over-emphasized the pleadings, my intent was to decide the legal questions about the scope of coverage for purposes of the duty to indemnify, and on those questions, Admiral has not demonstrated a manifest error of law or fact warranting reconsideration.

### C.    Anticipatory Breach

Fox's summary judgment motion maintained that Admiral repudiated its duty to defend by its pretrial refusal to defend Wexford for post-trial activities. [130] at 29–30. Responding only briefly to Fox's argument, Admiral stated that it had ceased defending Wexford upon exhaustion of coverage; Admiral provided no alternative argument in case coverage was not exhausted. [140] at 15–16. Now, after the summary judgment opinion held that there was remaining coverage available to Wexford, Admiral argues that the issue of anticipatory breach was raised sua sponte and decided incorrectly. Neither party's summary judgment briefs nor the summary judgment opinion used the specific phrase "anticipatory breach," but Fox's motion for summary judgment was based on that idea—namely, that by announcing a refusal to defend when coverage was not exhausted, Admiral announced a planned breach. The issue was not raised sua sponte or "outside the adversarial issues presented to the Court" in the parties' cross-motions for summary judgment. *Bank of Waunakee*, 906 F.2d at 1191.

Admiral raises several arguments for why the ruling on anticipatory breach was a manifest error of law: (1) anticipatory breach is legally distinct from breach of contract, (2) Wexford's need for a post-trial defense was a contingent event, and (3) Wexford did not establish damages for anticipatory breach. All of these arguments could have been raised by Admiral in opposition to Fox's summary judgment motion, however, and "a motion for reconsideration is an improper vehicle . . . to tender new legal theories." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th

Cir. 1986). For this reason, Admiral's motion to reconsider the anticipatory breach ruling is denied.

In addition, addressing Admiral's new arguments on their merits, there was no manifest error of law in holding that Admiral's unequivocal refusal to defend Wexford for any post-trial activity was an anticipatory repudiation of its duty to defend. Despite asserting that breach of contract and anticipatory breach of the duty to defend are distinct doctrines, and that the opinion erred by not citing cases specific to anticipatory breach of the duty to defend, Admiral has not identified any legal elements specific to anticipatory breach that would change the outcome. The cases explain that "for there to be an anticipatory breach, the law requires that there be a positive and unequivocal manifestation of a party's intent not to render the performance promised under the contract when the time fixed in the contract arrives." *Bituminous Cas. Corp. v. Commercial Union Ins. Co.*, 273 Ill.App.3d 923, 930 (1st Dist. 1995); *Busse v. Paul Revere Life Ins. Co.*, 341 Ill.App.3d 589, 594, (1st Dist. 2003) ("In Illinois, anticipatory repudiation is actionable as a breach of contract when—and only when—the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance.") (quotation marks omitted); *Pope ex rel. Pope v. Econ. Fire & Cas. Co.*, 335 Ill.App.3d 41, 46 (1st Dist. 2002) ("An anticipatory repudiation has been defined as a manifestation by one party to a contract of an intent not to perform its contractual duty when the time fixed in the contract has arrived. The party's manifestation

must clearly and unequivocally be that it will not render the promised performance when it becomes due.") (citations omitted).

These elements for anticipatory breach were met on the undisputed facts. Admiral does not dispute that it unequivocally refused to defend Wexford for post-trial activities. As an insurer with the duty to defend, Admiral had a duty to pursue post-trial remedies "in circumstances where reasonable grounds are present." *Ill. Founders Ins. Co. v. Guidish*, 248 Ill.App.3d 116, 122 (1st Dist. 1993); *see also Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 359 Ill.App.3d 872, 891 (2d Dist. 2005) (insurer remained obligated to defend insured, even during pendency of declaratory judgment appeal regarding its duty to defend, "so long as there remained *any question* as to whether the underlying claims were covered by the policy") (emphasis in original), *aff'd*, 223 Ill.2d 352 (2006). Admiral's statement that it would not defend Wexford post-trial was a "positive and unequivocal" manifestation of its intent not to perform its contractual duty when the time arrived, and therefore was an anticipatory breach of its duty to defend, even under Admiral's cited case law.

Citing mainly to *Pope ex rel. Pope v. Economy Fire & Casualty Co.*, 335 Ill.App.3d 41 (1st Dist. 2002), Admiral contends that its post-trial duty to defend was dependent on the need for any post-trial activity, which was a contingent event. Since Wexford settled before trial, Admiral argues that Fox cannot show that Wexford would have even needed a post-trial defense. This reads *Pope* too broadly. *Pope* merely held that even in cases of anticipatory breach, the insured must show

that it was ready and willing to perform conditions precedent. The insured in *Pope* was sued by a tenant for lead paint, but the insurer refused to defend under an insurance policy with a lead paint exclusion. There was no anticipatory breach because the insured could not establish the potential for coverage, which was a condition precedent to the duty to defend, and because a second insurer fully defended the case, so the insured could not establish damages. 335 Ill.App.3d at 48; *see Yale Dev. Co. v. Aurora Pizza Hut, Inc.*, 95 Ill.App.3d 523, 527 (2d Dist. 1981) (relied on by *Pope*; holding that a party suing for anticipatory breach "must show an ability and willingness to perform his part of the contract"). Wexford's situation differs from *Pope*. The occurrence of post-trial activity—while "contingent" in the sense of being a "future" event—was not a condition precedent that Wexford needed to perform under its insurance policy in order to obligate Admiral's defense against Fox's lawsuit. *See, e.g., Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 383 Ill.App.3d 645, 668 (1st Dist. 2007) ("A condition precedent is defined as a condition in which *performance* by one party is required before the other party is obligated to perform.") (emphasis added).

Admiral also argues that because Wexford settled, the lack of post-trial activity excuses its anticipatory breach and means that Fox cannot show that Wexford was damaged because it was never left without a defense. But the lack of post-trial activity resulted from Wexford's chosen remedy for the breach—i.e., a settlement with Fox—and does not excuse Admiral's breach. A non-repudiating party "may elect to treat the repudiation as a breach putting an end to the contract"

and may change its position in reliance on the repudiation. *Bituminous Cas.*, 273 Ill.App.3d at 930; *see also Yale Dev.*, 95 Ill.App.3d at 527 (anticipatory breach requires proof of readiness to perform conditions precedent, but "may excuse one from performing a useless act"). And unlike in *Pope*, where the insured was fully defended by another insurer, Wexford would have been left without a defense after trial if it had not settled. In the insurance context, "[t]he measure of damages for such a breach [of the duty to defend] is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred." *U.S. Gypsum*, 268 Ill.App.3d at 621 (quoting *Thornton v. Paul*, 74 Ill.2d 132, 144–45 (1979)). Fox (as Wexford's assignee) is endeavoring to prove that its settlement was reasonable. If so, those are its damages for the breach of the duty to defend.

There was no manifest error of law or fact in the ruling concerning the duty to defend.

### D.    Setoff

Admiral moved for a setoff under the Illinois double recovery rule and the Joint Tortfeasor Contribution Act, 740 ILCS 100/2, following the analysis applied in the underlying litigation by Judge Holderman, who ruled on a separate defendant's setoff request. Admiral wanted to set off from Wexford's $14 million consent judgment the settlement amounts that Fox had collected in the underlying litigation.[4] [114] at 4–8. Because these other settlements total over $15 million, a

---

[4] Specifically, those settlements were Admiral's $3 million payment to Fox on behalf of Wexford's employees, and the Illinois Department of Corrections' $12.43 million post-trial settlement with Fox.

setoff of this magnitude would prevent Admiral from having to pay any portion of the $14 million Wexford consent judgment. Fox opposed a setoff, arguing that: (1) the setoff doctrine only "protects *nonsettling* tortfeasors" by crediting the amount of other tortfeasors' earlier settlements against a later judgment against the nonsettling tortfeasor, (2) neither Admiral nor Wexford was a nonsettling tortfeasor, and (3) the policy of preventing plaintiffs from receiving a double recovery was not implicated by settlements. [143] at 5, 10–14 (emphasis in original). The summary judgment opinion held that the Contribution Act allows a *nonsettling* defendant (i.e., a defendant who becomes liable after an adverse judgment) to claim setoff amounts for *prior* settlements between the plaintiff and settling defendants. [153] at 40–41; *see Pasquale v. Speed Prods. Eng'g*, 166 Ill.2d 337, 368–69 (1995) (the Contribution Act applies to "a nonsettling tortfeasor"). Applying this reading of the Contribution Act to the circumstances of this case, the opinion further held that neither Wexford nor Admiral were entitled to a setoff because the $14 million Wexford consent judgment was not an "adverse" judgment on the merits but rather the court-ordered embodiment of Wexford's settlement agreement. [153] at 40–41.

In its motion for reconsideration, Admiral argues that the idea of the consent judgment being a settlement and not an "adverse" judgment on the merits was a manifestly erroneous, sua sponte ruling. While the specific issue of whether a consent judgment is an "adverse" judgment for the purposes of the Contribution Act was not briefed by the parties, that statement was merely a side point and the logical corollary to Fox's briefed arguments (and the opinion's overall ruling) that

the setoff doctrine only protects nonsettling tortfeasors and that neither Admiral nor Wexford was a nonsettling defendant with the right to a setoff. After relinquishing its opportunity to reply to Fox's arguments, raising these arguments on reconsideration is not appropriate. *See, e.g., Bally Exp.*, 804 F.2d at 404 ("[A] motion for reconsideration is an improper vehicle . . . to tender new legal theories.").

Considered on their merits, Admiral's arguments do not demonstrate a manifest error of law requiring reconsideration. The summary judgment opinion did not state that consent judgments are not "real" or "true" judgments but merely recognized the duality of consent judgments as enforceable court orders that embody private settlement agreements. The case law cited by Admiral does not contradict this view, and even reaffirms it.[5] *See, e.g., Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) ("A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature."). Other cases cited by Admiral merely reaffirm the enforceable nature of consent judgments, but Admiral cites no case suggesting that a settling defendant, by agreeing to a consent judgment, is transformed into a nonsettling tortfeasor for the purpose of the

---

[5] Admiral's summary judgment and motion to reconsider arguments also reflect the unique dual nature of consent judgments. On the one hand, Admiral argues that the Wexford consent judgment should be treated as an enforceable, non-negotiated judgment for the purpose of setoff under the Contribution Act; on the other hand, Admiral argues that the consent judgment should be considered a non-enforceable, collusive settlement negotiated between Fox and Wexford that did not reflect the merits of the case.

Contribution Act. Admiral does not dispute that Wexford was a settling defendant or that the Contribution Act applies only to nonsettling tortfeasors.[6]

Admiral repeats unsuccessful arguments about the applicability of the double recovery rule to consent judgments embodying negotiated settlement agreements. Insisting that the cited case law in the summary judgment opinion only shows that "contractual" settlements do not implicate the double recovery rule, Admiral finds fault with the opinion for not citing a case that, it believes, explicitly states that consent judgment settlements do not implicate the double recovery rule. In addition to the reasons previously explained in the summary judgment ruling, it has long been settled in Illinois that negotiated consent judgments, like other settlements, do not implicate the double recovery rule:

> Such judgments are uniformly understood to merely record a settlement or agreement between the parties. They are not a judicial determination of the rights of the parties or the issues involved in litigation. There having been no adjudication of rights and issues in [plaintiff's] action against the third party, it is as if settlement without suit had been effected. Under such circumstances, no inferences as to [defendant's] freedom from negligence can be legally drawn. Nor has there been a recovery in the eyes of the law which, coupled with the compensation award, would result in a "double satisfaction for the same wrong."

*Prill v. Ill. State Motor Serv., Inc.*, 16 Ill.App.2d 202, 207–08 (4th Dist. 1958) (citations omitted); *see also Blanski v. Aetna Cas. & Sur. Co.*, 287 F.2d 113, 116 (7th

---

[6] Admiral also does not dispute that the Contribution Act only applies to prior settlements. The $12.43 million settlement (between Fox and IDOC on behalf of its employee found liable at trial) occurred after the Wexford consent judgment.

Cir. 1961) (quoting *Prill* to hold that an employer's insurer was not entitled to a lien against an injured employee's settlement with alleged third-party tortfeasors).

There was no manifest error in holding that Admiral is not entitled to a setoff under either the Contribution Act or the Illinois double recovery rule.

## II. Right to a Jury Trial

Fox's complaint includes a jury demand on all issues. [38] at 17. The parties were invited to submit briefs on whether the reasonableness of the underlying Fox-Wexford settlement should be decided by a judge or jury. In Illinois courts, this issue is typically resolved at a reasonableness hearing before a judge. *See, e.g., Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141, 164 (2003) (remanding to circuit court to consider whether decision to settle and amount of damages were reasonable); *Stonecrafters, Inc. v. Wholesale Life Ins. Brokerage, Inc.*, 393 Ill.App.3d 951, 966 (2d Dist. 2009) (determining settlement reasonableness would require "a hearing for the trial court"). Fox contends that determining settlement reasonableness simply establishes the damages that Fox may recover on his claims for breach of contract and bad faith failure to settle, and is triable to a jury as an action at law seeking a legal remedy. Admiral maintains that there is no right to a jury trial because assessing whether a settlement is unreasonable, collusive, or fraudulent is an equitable issue and is a remedy analogous to a good faith finding under the Illinois Joint Tortfeasor Contribution Act.

### A. Legal Standard

Even when a district court is applying the substantive law of a state, federal procedural law controls the question of whether there is a right to a jury trial. *Int'l*

*Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) (citing *Simler v. Conner,* 372 U.S. 221, 222 (1963)). Under Federal Rule of Civil Procedure 38(a), there is a right to a jury trial where required by the Seventh Amendment or a federal statute. *Int'l Fin.*, 356 F.3d at 735. The Seventh Amendment limits the right to a jury trial to "[s]uits at common law, where the value in controversy shall exceed twenty dollars." *Id*.

Courts engage in a two-step analysis to determine the right to a jury trial under the Seventh Amendment. First, courts must "compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id*. at 735 (quoting *Tull v. United States,* 481 U.S. 412, 417–18 (1987)). The latter inquiry, into the nature of the remedy, is more important than the historical comparison. *Id*. at 735–36 (citing *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 42 (1989)).

### B.     Historical Comparison

As Wexford's assignee, Fox stands in Wexford's shoes and asserts Wexford's rights and interests against Admiral. Under Illinois law, insureds may enter into reasonable settlements with a third-party when the insurer breaches its obligations. Fox asserts two different theories to hold Admiral to the Wexford settlement: (1) breach of the insurance contract (through Admiral's announced breach of the duty to defend, leading Wexford to settle with Fox), and (2) breach of Admiral's duty to act in good faith in responding to settlement offers. Compared to historical pre-merger actions, these claims are actions at law seeking legal relief.

The breach of the duty to defend is a breach of contract and thus historically an action at law. Illinois courts treat the insured's third-party settlement as damages for breach of contract: "[w]hen the insurer wrongfully refuses to defend a complaint that alleges facts within coverage, it is liable for breach of contract. The measure of damages for such a breach is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred." *U.S. Gypsum*, 268 Ill.App.3d at 621 (quoting *Thornton*, 74 Ill.2d at 144–45); *see Kinnan v. Charles B. Hurst Co.*, 317 Ill. 251, 256–60 (1925) (insurer who breached duty to defend became liable for settlement entered into by insured); *Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 323 Ill.App.3d 121, 132 (1st Dist. 2001) (measure of damages for breach of duty to defend is the amount of judgment or a reasonable settlement) (citing *Kinnan,* 317 Ill. at 256–60), *aff'd as modified and remanded*, 203 Ill.2d 14 (2003).

The breach of the duty to settle in good faith is a tort. *Chandler v. Am. Fire & Cas. Co.*, 377 Ill.App.3d 253, 257 (4th Dist. 2007); *see Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wis.*, 547 F.3d 810, 812 (7th Cir. 2008) ("This duty is a narrow exception to the Illinois courts' otherwise steadfast refusal to recognize an independent tort arising from the breach of this contractual covenant [of good faith and fair dealing implied in an insurance contract]."). Tort claims were typically actions at law. *See, e.g.*, *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (allegations of breach of contract and gross negligence raised legal claims); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("It

is settled law, however, that the Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to 'soun[d] basically in tort,' and seek legal relief."); *Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("A damages action under the [Civil Rights Act] sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law."). When an insurer breaches the duty to settle, the insured may seek recovery for a reasonable settlement reached with the third-party or for an excess judgment entered against the insured—these are the insured's damages for the breach. *See SwedishAmerican Hosp. Ass'n of Rockford v. Ill. State Med. Inter-Ins. Exch.*, 395 Ill.App.3d 80, 103 (2d Dist. 2009) (excess judgment constitutes damage for breach of the duty to settle; insured may also effect a reasonable settlement).

Based on how Illinois courts describe these types of claims, the issues for trial are more in the nature of determining damages for breach of the insurer's obligations and are analogous to pre-merger actions at law.

## C.    Remedy

The nature of the remedy sought—whether it is legal or equitable—is more important than the historical comparison to pre-merger actions. *Int'l Fin.*, 356 F.3d at 735–36 (citing *Granfinanciera,* 492 U.S. at 42). The remedy sought by Fox, as Wexford's assignee, is to hold an insurer who breached its duty to defend (or duty to settle) to the insured's third-party settlement, if that settlement is reasonable and

non-collusive. At first blush, it would appear that compelling a party to pay on the terms of an agreement to which it was not a signatory would be an equitable remedy. But with a closer look at the distinctions between legal and equitable relief, this is more similar to legal relief than equitable relief.

There is no cut-and-dried rule for determining whether a remedy is legal or equitable in nature, but there are general distinctions between the two forms of relief. *Int'l Fin.*, 356 F.3d at 736. One main distinction is that legal remedies traditionally involve money damages. *Id*. In contrast, equitable remedies are typically "coercive" and enforceable directly on the person or thing to which they are directed (e.g., an injunction, an accounting). *Id*. (citing, inter alia, 1 D. Dobbs, Law of Remedies § 1.2 (1993)); 1 D. Dobbs, Law of Remedies §§ 2.1(1)–(2) (comparing declaring a defendant's debt or obligation (legal relief) with commanding the defendant to do or refrain from a specific act (equitable relief)). The remedy sought by Fox—awarding an insured the amount of a reasonable settlement resulting from the insurer's breach of its duty to defend or duty to settle—is more akin to merely declaring Admiral's debt or monetary obligation to Wexford resulting from breaching its obligations, instead of commanding Admiral to do or refrain from a specific act. *See* 1 D. Dobbs, Law of Remedies §§ 2.1(1)–(2), 2.6(3). In essence, Fox seeks money damages, an adequate remedy at law.

Another distinction between the two forms of relief is that, traditionally, equitable relief is discretionary and legal relief is not. *Int'l Fin.*, 356 F.3d at 736; 1 D. Dobbs, Law of Remedies § 2.1(1) ("One other striking characteristic of equity and

equitable remedies is a high degree of discretion. The legal system . . . emphasizes rights. The equity system treats access to its remedies as at least in part a privilege. Even if a plaintiff makes out a case for relief according to all the preexisting rules, the court of equity may in its discretion refuse its aid."). If the Fox-Wexford settlement is determined to be reasonable, and if Admiral breached its contractual duties or its tort duty to settle, awarding Fox (as Wexford's assignee) the settlement does not appear to be discretionary. Admiral states that this determination is discretionary, but has cited no case law suggesting that a judge has the discretion to decline to award an insured a reasonable, non-collusive settlement entered into when the insurer breached its obligations. This lack of discretion is another indication that the relief sought is not an equitable remedy.

As Admiral points out, however, holding an insurer to a settlement to which it was not a party, and determining the reasonableness of that settlement, raises fairness concerns. But this general sense of "equity" as fairness is not the same as an "equitable" remedy, as understood historically: "When the term 'equitable' is used only to describe the moral basis of a claim or defense, the conclusion that the claim is equitable has no necessary legal effect on the remedy or on the procedure . . . . [Such a claim] appeals to 'the equities,' the sense of justice. It does not necessarily involve equity remedies, equitable defenses, or equitable procedures like the non-jury trial." 1 D. Dobbs, Law of Remedies § 2.1(3)); *see id.* § 2.6(3) ("The substantive or historical approach can easily slip into an almost mystic and

completely anti-historical approach when courts identify 'equity' with justice and fairness.").

The reasonableness determination for an insured's third-party settlement does have similarities to the good faith finding required for contribution under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2, for which there is no jury trial right. Under the Contribution Act, an insurer who pays a settlement to release both its insured and a non-covered tortfeasor can seek contribution from that tortfeasor, if the settlement was made in good faith and for an appropriate amount. These reasonableness determinations are similar, but are treated differently by Illinois courts. Contribution is an equitable doctrine and, in Illinois, "the Contribution Act is a new statutory right created by the legislature and, as such, does not confer the right to a jury trial." *Orejel v. York Int'l Corp.*, 287 Ill.App.3d 592, 602 (1st Dist. 1997). An insured's reasonable settlement, on the other hand, is considered money damages for breach of an insurer's obligations.

Overall, determining the reasonableness of the insured's settlement for the insurer's breach of its obligations is more like determining reasonable money damages for breach than it is like finding good faith under the Contribution Act.

### D.    Other Case Law

The Seventh Circuit has not directly addressed whether a jury must decide the reasonableness of an insured's settlement, although it has affirmed at least one case where the jury determined that an insured's settlement payment and attorney fees were reasonable. *See A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 933, 942 (7th Cir. 1991) (jury determined amount of reasonable attorneys' fees

and costs expended by insured in litigation where insurer breached duty to defend; jury also determined that insurer owed insured $40,000 in settlement costs).

The jury trial right in the insurance settlement context has been addressed by very few federal courts. Admiral points to *American Casualty Co. of Reading, Pennsylvania v. Kemper*, No. CV-07-1149-PHX-GMS, 2009 WL 1749388 (D. Ariz. June 18, 2009), which concluded that a reasonable settlement award was an equitable claim and remedy for which there was no jury trial right. In *Kemper*, the court determined that the claim at issue was "equitable" because it was brought in a declaratory judgment action, which the court believed was a "creatur[e] of equity," and because settlement reasonableness "rests on traditional concerns of fairness." 2009 WL 1749388, at *2. But the *Kemper* analysis is not persuasive. Fox's action against Admiral is not a declaratory judgment action; even if it were, it is well-settled under Seventh Circuit law that declaratory judgments are "neither legal nor equitable," but instead the nature of the underlying dispute determines whether a jury trial is available. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988)). Moreover, a claim evoking "traditional concerns of fairness" does not bear on whether a specific remedy is "equitable" or was historically found in courts of equity. *See, e.g.,* 1 D. Dobbs, Law of Remedies §§ 2.1(3), 2.6(3). Notably, the *Kemper* court did not address the key distinctions between legal remedies and equitable remedies, including money damages (legal),

coercive and directly enforceable relief (equitable), and discretionary relief (equitable). *See Int'l Fin.*, 356 F.3d at 736.

*Kemper* and Admiral both rely on a state-court case, *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277 (Minn. 1990), which found the issue to be equitable and for the court. But a review of *Alton M. Johnson*—which did not apply federal procedural law—shows that the Minnesota Supreme Court viewed actions over these types of settlements not as damages for breach of contract or the duty to settle but "as an action to enforce an agreement against an indemnifier who was not a party to the agreement." 463 N.W.2d at 279. Like the court in *Kemper*, the *Alton M. Johnson* court also held that these claims sound in equity because the decisionmaker was "being asked to apply its sense of fairness to evaluate a compromise of conflicting interests, a characteristic role for equity." *Id.*

The reasoning in *Alton M. Johnson* does not reflect the Illinois case law holding that these settlements are damages for breach of the insurer's obligations, and does not address the distinctions between legal and equitable remedies. The other state-law cases cited by Admiral are not persuasive for similar reasons, or because the settlement right in that state was created by statute, or because the issue of the right to a jury trial was not actually analyzed in the opinion. For example, *Orejel*, 287 Ill.App.3d at 602, and *Ewanic v. Pepper Construction Co.*, 305 Ill.App.3d 564, 570 (1st Dist. 1999), held that there was no jury trial right on an insured's right to contribution from a joint tortfeasor for the insured's settlement with the injured third party. These claims were brought under the Contribution

Act, but statutory and contribution rights are not at issue for the Wexford-Fox settlement. These cases are inapplicable.

Admiral also cites to another federal case, *Midwestern Indemnity Co. v. Laikin*, 119 F.Supp.2d 831 (S.D. Ind. 2000), which did not look to federal procedural law, but instead stated its belief that "the Supreme Court of Indiana would instruct trial courts to resolve a challenge to the reasonableness of a consent judgment with a covenant not to execute." *Id.* at 844. But the *Laikin* opinion also recognized that, while some states (e.g., Minnesota) have settlement reasonableness tried to a court, "[t]he Indiana courts are not likely to adopt that approach of taking such an issue away from a jury where it is genuinely disputed, but they would set a high bar before allowing an insurer who, by definition, has breached its duty to its insured, to impose such a trial on the parties who thought they had settled their dispute." *Id.* at 845.[7]

The *Kemper* opinion also analogized to the reasonableness determination for attorney fee awards, which is traditionally left to the court. But freestanding breach of contract claims for attorneys' fees can be triable to a jury. *See, e.g., J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1116–19 (10th Cir. 2009) (action for reasonable attorneys' fees incurred in defending underlying litigation was triable to

---

[7] The other federal case cited by Admiral, *Home Federal Savings Bank v. Ticor Title Insurance Co.*, 695 F.3d 725 (7th Cir. 2012), did not address the jury trial issue but just generally quoted 7C Appleman, Insurance Law & Practice § 4714 as stating: "A settlement made by the insured of a pending action must be reasonable; and the court will examine the merits of the claim to determine that question." *Id.* at 736. This section in Appleman, however, made that statement in passing and did not address the issue in the context of the right to a jury trial. A review of the district court docket in *Home Federal* shows that no jury demand was made.

a jury because it was "at bottom, a legal action for compensatory damages resulting from a breach of contract," and "[t]hat the measure of damages happens to be attorneys' fees does not in and of itself change the nature of [the] claim); *see also Simler*, 372 U.S. at 223 (jury trial required to determine and adjudicate the amount of "reasonable" fees owed to a lawyer by a client under a contingent fee retainer contract, which was a traditionally legal action).

Although few federal courts have specifically addressed whether a jury must decide settlement reasonableness, many federal circuit courts—including the Seventh Circuit—have addressed appeals where settlement reasonableness is presented to jury, and none of the circuit courts commented that it was an unusual or inappropriate approach.[8] *See, e.g., A. Kush & Assocs.*, 927 F.2d at 933, 942; *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 534 Fed. App'x 926, 927–28 (11th Cir. 2013); *Vermont Mut. Ins. Co. v. Maguire*, 662 F.3d 51, 54–55 (1st Cir. 2011); *Crawford v. Infinity Ins. Co.*, 64 Fed. App'x 146, 147–48, 151 (10th Cir. 2003); *Atchison, Topeka & Santa Fe Ry. Co. v. Sherwin-Williams Co.*, 963 F.2d 746, 749 (5th Cir. 1992).

Determining whether an insured's settlement is reasonable is most similar to determining money damages for an insurer's breach of contract and therefore most

---

[8] There are also instances where the issue was left to the court, and there was no commentary either. *See, e.g., Chicago Title Ins. Co. v. IMG Exeter Assocs. Ltd. P'ship*, 985 F.2d 553 (Table) (4th Cir. 1993) (affirming court's judgment that settlement was reasonable and could be recovered for breach of an indemnity agreement).

similar to an action at law seeking a legal remedy. Fox has the right to a jury trial on this issue.

## III.  Conclusion

The motion to reconsider [156] is granted in part. The opinion and order ruling on the cross-motions for summary judgment is revised to clarify that Fox must establish that Wexford settled in reasonable anticipation of liability in order to hold Admiral liable under its duty to indemnify. The motion is denied in all other respects. Fox has a Seventh Amendment right to a jury trial on the question of the reasonableness of the Fox-Wexford settlement.

ENTER:

Manish S. Shah
United States District Judge

Date:  6/28/16