# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAY A. FOX, by and through his guardian, ROSE FOX, | |
| Plaintiff, | No. 12 CV 8740 |
| v. | Judge Manish S. Shah |
| ADMIRAL INSURANCE CO., | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Ray Fox moves to bar defendant Admiral Insurance Co.'s expert William Cormack, and Admiral moves to bar Fox's expert Allan Windt. The parties offer these experts to opine on Admiral's good or bad faith in its approach to settlement of the underlying litigation. *See generally* [153]. For the following reasons, Fox's motion to bar William Cormack is granted in part and Admiral's motion to bar Allan Windt is granted in part.[1]

## I. Legal Standards

The district court has a gatekeeping obligation to ensure that expert testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Federal Rule of Evidence 702, an expert witness qualified by "knowledge, skill, experience, training, or education" may testify if the expert's specialized knowledge will help the trier of fact, if the testimony is based on

---

[1] The other experts at issue in the motions, Charles Hervas and Patrick Driscoll, will not be called to testify at trial. [186] at 1; [187] at 1.

sufficient facts or data, and if the testimony is based on a reliable methodology. Before admitting expert testimony, a court must determine: 1) whether the witness is qualified; 2) whether the expert's methodology is reliable; and 3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The proponent bears the burden of demonstrating by a preponderance of the evidence that the expert's testimony satisfies this standard. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702, Advisory Comm. Note).

## II. Analysis

### A. Admiral's Expert

Cormack is an attorney with nearly 50 years of experience in insurance litigation and the insurance industry. Admiral offers Cormack as an expert on insurance industry custom and practice, arguing that Cormack's testimony would assist the jury in determining whether Admiral breached its duty to settle the underlying litigation by declining various settlement offers from Fox. Fox does not dispute Cormack's qualifications but contends that Cormack's anticipated testimony consists of legal conclusions regarding the insurance policies, which contradict the court's summary judgment rulings. Admiral responds that Cormack is qualified to testify and that his opinions merely reflect "industry custom and practice" on coverage.

Cormack's report similarly states that his opinions on the reasonableness of Admiral's coverage positions are based on "industry custom and practice" and on

how claims are "properly" handled by insurers. But Cormack construes various provisions of the insurance policies and explains available coverage (in his view), based on these contractual interpretations and on the allegations and rulings in the underlying litigation. *See* [173-1] at 155–75. Cormack opined that personal injury coverage (including civil rights violations) applied to Dr. Peters and Nurse Becker (in addition to Wexford); that professional services coverage did not apply because Fox did not allege a medical malpractice claim; that only one policy year applied and limits could not be stacked, meaning that only one $3 million limit was in play. [173-1] at 155–75. These opinions directly conflict with the court's rulings that: professional services coverage was available to Wexford, Dr. Peters, and Nurse Becker but that Dr. Peters and Nurse Becker were excluded from personal injury coverage; personal injury *and* professional services coverage applied to Fox's claim; multiple policy years were triggered and coverage could be stacked for more than $3 million. [153] at 12–26.

Legal conclusions are not appropriate topics of expert testimony. An expert witness may not testify simply regarding his reading of a contract, *RLJCS Enterprises, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007), and "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). While Admiral maintains that Cormack is well-qualified to offer these opinions based on his experience in the industry, his qualifications are not at issue, and

3

placing the phrase "based on industry custom and practice" before statements derived from legal interpretation of contracts does not make them admissible. None of the authority cited by Admiral permits an expert to testify as to their interpretation of insurance policies at issue, especially an erroneous interpretation.[2] Cormack may not offer testimony on these legal conclusions.

Admiral argues that Cormack's testimony should be admissible because the reasonableness of Admiral's coverage positions should be an issue for the jury, citing to *Stevenson v. State Farm Fire & Casualty Co.*, 257 Ill.App.3d 179, 184 (1st Dist. 1993). After a bench trial on a bad faith claim, judgment in that case was entered in favor of the insurer because its refusal to settle was not unreasonable, in

---

[2] *See, e.g., American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338–39 (11th Cir. 2009) (underwriting professor qualified to opine on the nature of financial underwriting); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132–34 (2d Cir. 2006) (underwriter could testify to insurers' custom of narrowly defining "occurrence" to maximize the number of deductibles); *Manhattan Re-Ins. Co. v. Safety Nat'l Cas. Corp.*, 83 Fed. App'x 861, 863 (9th Cir. 2003) (expert allowed to opine on "insurance industry contract drafting custom and practice" because "he did not improperly testify about the legal interpretation of contract clauses"); *Mineral Inv'rs, Ltd. v. Lamb*, 9 F.3d 108 (TABLE), at *4 (6th Cir. 1993) (real estate expert assisted the jury on the question of the reasonableness of plaintiffs' reliance on the appraisal); *Camacho v. Nationwide Mut. Ins. Co.*, 13 F.Supp.3d 1343, 1365–67 (N.D. Ga. 2014) (insurance professional could offer testimony on processing insurance claims and responding to demand letter where his references to terms of legal significance were in passing; the court noted that "[a]n expert may not testify regarding the legal implications of conduct because the court must be the jury's only source of law"); *Shepherd v. Unumprovident Corp.*, 381 F.Supp.2d 608, 612 (E.D. Ky. 2005) (insurance expert allowed to offer opinions "concerning claims adjusting/management practices," disability claim review standards and the industry generally); *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410, at *1 (N.D. Ill. Apr. 26, 2004) (experts could identify the standard of railroad care upon which their opinions were based "subject to the Court's control if they state this erroneously or inadequately"); *In re Starr*, No. 09-64079, 2012 WL 2921451, at *4 (Bankr. N.D. Ohio July 17, 2012) (experts permitted to offer opinions on the customary practices of lenders in reviewing the financial disclosures of borrowers during the application process because their opinions did not state a legal conclusion).

part because coverage was fairly debatable. *Stevenson,* however, did not involve expert testimony at all, much less expert testimony interpreting insurance policies.

In rebuttal to Fox's (now withdrawn) expert Driscoll, Cormack also offered the opinion that there was no conflict of interest between Admiral and Wexford in the underlying litigation. [173-1] at 175–78. Driscoll opined that Admiral should have recognized a conflict of interest between Wexford's interests and Dr. Peters and Nurse Becker's interests, although they were all represented by the same trial counsel. Now that Driscoll is not testifying at trial, it is unclear whether Admiral still seeks to introduce this opinion from Cormack. Fox argues, without citing authority, that whether Admiral engaged in a conflict of interest is a legal determination. Admiral did not respond to this argument, and it is Admiral's burden to prove the admissibility of Cormack's expert testimony. Admiral has not done so. *See Lewis*, 561 F.3d at 705. Cormack's opinions on conflicts of interest are inadmissible.

Cormack may not opine on Admiral's reasonableness as a function of any legal conclusion concerning policy limits or insurance-contract interpretation. The ultimate opinions in his report cannot be separated from these legal conclusions, and so he may not offer them. But he may provide insight into industry custom and practice, and such testimony would be helpful to the jury, particularly to place Admiral's conduct in a context within which to judge its reasonableness. For example, an explanation of why the July 2012 settlement offer was unusual and placed pressure on multiple insureds in a manner that could compromise an

insurance company's interests would be relevant. Testimony concerning the role that insureds play in requesting that their insurance company accept settlement offers would also be relevant. Testimony that insurance companies ought to evaluate settlements in light of policy limits (without opining on what the limits were in this case) may be offered. In general, testimony concerning the type of considerations that ordinarily, as part of the industry practice, factor into a company's decision to settle may be offered, but Cormack's application of those considerations to Admiral may not be offered because his methodology is too entwined with inadmissible legal opinions.

**B.    Fox's Expert**

Fox offers Windt, an attorney with 30 years of experience in insurance coverage, to opine that Admiral acted unreasonably in rejecting Fox's settlement offers. Admiral argues that Windt impermissibly opines on insurers' legal obligations, interprets the insurance policies as to the coverage available to Wexford (and Dr. Peters and Nurse Becker), interprets the policies' anti-stacking provisions, and opines on the availability of contribution or indemnity in the underlying action. Fox does not directly address these assertions other than to respond that Windt did not make legal conclusions about coverage but instead assumed coverage positions and explained industry standards for evaluating settlement responsibilities.

Like Cormack, Windt's report offers many legal conclusions. He interprets the insurance policies as to whether Dr. Peters and Nurse Becker were insureds for personal injury and professional services coverage, whether multiple coverage provisions applied to Fox's claims, and whether the anti-stacking clauses in the

6

policies permitted stacking multiple policy limits. [177-2] at 11–15. These opinions are inadmissible legal conclusions. *See RLJCS Enters.*, 487 F.3d at 498; *Good Shepherd*, 323 F.3d at 564.

A portion of his report relates to the narrower issue of his opinion on the industry practice of determining when to settle a claim and valuing settlements. *See* [177-2] at 3–11. These opinions reflect his analysis of how to value a claim for settlement purposes, based on his experience in the insurance industry.[3] This information might assist the jury in determining whether it would have been appropriate for Admiral to accept Fox's settlement offers or whether Admiral breached its duty to settle.[4] Admiral argues that Windt, an attorney with experience handling insurance coverage claims and author of an insurance law treatise, lacks direct experience in the insurance industry and is therefore not qualified to opine on insurance industry custom and practice. Admiral cites to two cases excluding Windt's report while noting that he lacked experience in the insurance industry. *See Century Indem. Co. v. The Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2015 WL 5566351, at *2–3 (D. Or. Sept. 21, 2015); *Mirarchi v. Seneca Specialty Ins. Co.*, No. CIV.A. 10-3617, 2013 WL 1187065, at *6 (E.D. Pa. Mar. 22,

---

[3] His passing references to the duty to settle in this context are not legal conclusions but explain some context for his opinions on settlement evaluations.

[4] Admiral argues in its reply brief that expert testimony is not necessary on the bad faith claim, citing to two Illinois cases that did not involve any expert testimony. But neither case involved the issue of an *insurer's* duty to settle in good faith, only evaluating the insured's decision to settle and whether that settlement was reasonable. *See Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 203 Ill.2d 141 (2003); *Central Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339. Even if expert testimony is not required, it is admissible if it will assist the jury. *See* Fed. R. Evid. 702(a).

2013), *aff'd*, 564 Fed. App'x 652 (3d Cir. 2014). Fox responds that Windt has handled thousands of insurance claims over approximately 30 years and that he has testified at thirteen trials, including testimony about industry practices to assist the fact-finder to determine whether the defendant acted in bad faith. *See, e.g., McCrink v. Peoples Ben. Life Ins. Co.*, No. 2:04-CV-01068-LDD, 2005 WL 730688, at *4–5 (E.D. Pa. Mar. 29, 2005) (admitting Windt's opinions on bad faith, but precluding his "impermissible legal conclusions on the issue of contract construction"). When Windt's opinions are limited to determining when to settle a claim, Windt's extensive experience as an attorney in handling insurance coverage claims qualifies him to opine on this issue.

But Windt's estimations of the potential verdict in the underlying litigation here are not supported by a reliable, tested methodology. He seems to pick discount factors that are based more on his intuition than a replicable technique. For example, he sometimes "splits the difference" when assessing certain valuations, and sometimes does not split the difference based on his credibility assessment. He reduces values by certain percentages when he perceived weakness in the numbers, but offers no method for the discounts he chooses. He includes facts that occurred after the settlement offers to opine on Admiral's reasonableness at the time of the settlement offers. He provides no explanation for why such after-the-fact information is relevant as a matter of industry custom. As with Cormack, albeit for slightly different reasons, Windt's application of his approach to the facts of this case is too weighted by impermissible legal conclusions and unreliable estimates to

8

be admissible. He may, however, provide his insight into the expected approach an insurance company ought to take when evaluating settlements.

## III. Conclusion

Fox's motion to bar Admiral's expert witnesses, [173], is moot as to Hervas and granted in part as to Cormack. Admiral's motion to bar Fox's expert witnesses, [176], is moot as to Driscoll and is granted in part as to Windt.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: 11/2/2016